## GRIDER *v.* THREE STATES LUMBER COMPANY.

### Opinion delivered February 6, 1904.

CONTRACT—CONSTRUCTION.—A contract for the sale of standing timber, the consideration of which was $3,000, provided that, at the expiration of the time limited for the removal of the timber, any tramway located on the land by the vendee should become the property of the vendor. The tramway originally placed on the land by the vendee rotted away. The vendee sold his interest to a sub-vendee, who, with the vendor's consent, built a railroad and put down iron rails, worth between $5,000 and $7,000. The vendor encouraged the sub-vendee to sell the rails, and treated them as his property. *Held,* that the sub-vendee had a right to remove the rails.

Appeal from Mississippi Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Affirmed.

Suit by Sue M. Grider and others against the Three States Lumber Company and another. The facts are stated by the court as follows:

STATEMENT BY THE COURT.

This was a suit in equity brought by the appellants against the appellees to restrain them from subletting certain premises and from tearing up and removing a tramway. The complaint alleged the following facts:

"Sue M. Grider is the owner in fee simple of the following lands: All of section 23, the north half of northeast quarter and north half of southwest quarter and southwest quarter of southwest quarter of section 24; the west half and northeast quarter of section 25; and northeast quarter of section 26, township 12 north, range 10 east; and the west half of west half of section 19, township 12 north, range 11 east; containing 1,820 acres, in Mississippi county, Arkansas. On the 20th day of January, 1896, plaintiffs entered into a contract with the Three States Lumber Company, by which they conveyed to it the timber on the above-described lands, leased to it ten acres of said lands to be selected by it for a sawmill site for a period of eight years, and granted it the right to construct a tramway over said lands or any other lands owned by plaintiffs. The contract provides that all buildings erected and tramways constructed by said lumber company on any of the plaintiffs' lands should be and become the property of the plaintiffs, and the defendants' right to use same should entirely cease at the expiration of eight years from the date of said contract. The defendants have nearly finished getting the timber off of said lands, and threaten and are attempting to sublet said ten acres and buildings thereon to third parties for purposes other than a mill site, and threaten and are about to tear up and remove the tramway constructed on said lands under said contract, in violation of the plaintiffs' rights, and to their great damage and irreparable injury." The prayer was for an order restraining the defendants, their agents and employees, from leasing, subletting or assigning said mill site or the buildings thereon, from tearing up, injuring or removing said tramway.

The contract conveys to the lumber company, in consideration of $3,150, all the standing merchantable timber on the lands

described in the complaint, but provides that, "if any of the timber herein conveyed shall remain standing upon the lands after the expiration of five years from the date hereof, the same shall revert to us or our assigns." It leases to the lumber company "any ten contiguous acres it may designate for a mill site for sawmill purposes upon of the lands hereinbefore described," and provides that "the grant of said mill site shall exist and continue for eight years from the date hereof; at the expiration of that date the ten acres so selected shall revert to us with all the buildings thereon, but not any of the machinery on same." It further provides as follows: "And for the same consideration we hereby grant to the said Three States Lumber Company a right of way eight feet wide through our lands adjacent to the lands above described, being sections 17, 18, 19 and 20, in township 12 south, range 11 east, along such line as they may hereafter locate and select for a tramroad, extending from the mill site hereinafter to be located to the Mississippi river, and this right of way over such line as may hereafter be located shall continue for a period of eight years from the date hereof. * * * At the expiration of eight years from the date hereof any tramroad located upon said right of way shall be and become our property."

A temporary injunction was granted at chambers, restraining the defendants from subletting or assigning the mill site, or the buildings thereon, and from tearing up, injuring or removing the tramway or any part thereof.

The Three States Lumber Company answered that they had no interest in the controversy, as they had assigned all of their rights under the contract to Ed Sims.

Ed Sims filed a separate answer, in which he alleged that he was not a party to the contract with the plaintiffs, and had nothing to do with it; that he bought the timber from the Three States Lumber Company; that he constructed a railroad on the lands of the plaintiffs; that it is not a tramway at all; that he constructed said railroad at his own expense, and it is his own property; that the plaintiffs have no interest in it, and he has a right to remove it whenever he so desires. This answer was sworn to. It was accompanied by an affidavit by Ed Sims, setting forth the same facts. The above answer and affidavit were made the basis of an application at chambers for a dissolution of the temporary

injunction. The application was denied. The defendant Ed Sims then filed a new answer, and alleged that at the time said contract was made, it was understood by all parties that he was to be the real beneficiary under same; that he took possession of the timber, selected the mill site, and erected his mill, and constructed a tramroad as contemplated in the contract; that said tramroad was built of wood, but proved insufficient for his use, and he removed the wooden rails and substituted iron, thereby making it a narrow gauge railroad. He denied that the plaintiffs would suffer irreparable damage by the removal of the rails; alleged that he was solvent, and that the plaintiffs had an adequate remedy at law. This answer was also sworn to.

An application for a temporary restraining order was made to the chief justice of this court, and denied.

*Rose & Coleman,* for appellant.

The tramroad was "located" when it was constructed or placed upon the right of way. See Cent. Dict. *verbo* "Locate;" Webster's Dict. *Id.;* 6 How. Pr. 37; 7 Wall. 290; 7 Coldw. 501; 8 Okla. 155; 136 U. S. 393; 65 Fed. 736. The language of the deed being shown to have been that of the grantee, the rule of construction most strongly against the grantor has no application. 103 Fed. 243. The appellees had no right to remove the tracks. 110 Mass. 328; 137 N. Y. 163; 1 Den. 91. The tramroad, if built without any previous agreement, would at once become the property of the grantor. 49 Mo. App. 472; 14 Pa. Co. Ct. Rep. 267; 38 N. J. Law, 165; 97 Mass. 279; 31 N. J. Eq. 31; 3 Hun, 613; 120 Fed. 487; 103 Mich. 494.

*W. A. Percy,* for appellees.

The injunction will not be granted because appellant has an adequate remedy at law. 11 Ark. 304; 33 Ark. 633; 32 Ark. 478. Appellees had a right to remove the rails, under the general rules applicable to trade fixtures. 27 Ark. 333; *Id.* 648-660; 29 Ark. 270; 56 Ark. 55; 30 Md. 347; 142 U. S. 396.

HUGHES, J. (after stating the facts). The contract in this case above referred to was made on behalf of the appellants, by W. H. Grider, who was the agent for his wife, and acting for her

s c—7

within the scope of his agency. . The price agreed to be paid by the appellees for the timber sold and for the privileges granted them was $3,150. In addition to conveying the timber to the appellees, the contract also conveyed the right to select a mill site, ten acres, and to make tramroads, or float the timber over the lands, and it still further conveyed a right of way through adjacent lands, eight feet wide from the mill site to the Mississippi river for a tramroad, which tramroad was erected. This tramroad is shown to have been made by laying boards together on the ground and putting down wooden rails on the plank. Having used this for a time, it began to rot, and proved insufficient for the purposes of the appellant, without great trouble and expense, and he concluded to put down iron rails, and finally put down cross-ties, and so changed the tram to a railroad. The appellants contend that under the contract they are entitled to the iron used by the appellee Sims, in changing the wooden tramway to a railroad, with iron rails; that, according to the contract, the appellees had no right to remove the iron, but it belonged to the appellants at the expiration of eight years. But it appears from the evidence in the case that the appellant Grider had an understanding with the appellee Sims about the placing of iron on the road, in which Grider assented to the putting of the iron down, and encouraged the appellee to put it down, and that he afterwards regarded the iron as the property of Sims, and encouraged him to sell it, and others to buy it of him. The value of this iron is shown by the evidence to be $5,000 to $7,000. It would be inconceivable and unreasonable that appellants should be allowed to retain this iron, under the circumstances in proof. If they were allowed to do so, they would receive thereby double the value of the amount for which they sold the timber on the land, to haul out which it was put down.

We think that, under the understanding and agreement between the appellee Sims and the appellant Grider, the said iron was the property of Sims, and that he had a perfect right to remove and dispose of it as he saw proper. The only controversy in the case is as to the appellee Sims' title to and right to remove this iron.

Finding no error, the decree is affirmed.